## GEORGE et al. v. RIDDLE et al.

(Circuit Court, D. Washington, S. D.   May 22, 1899.)

Public Lands—Northern Pacific Railroad Grant—Rights Acquired by Private Entry—Compelling Conveyance by Patentee.

The provision of section 6 of the act of July 2, 1864 (13 Stat. 365), making a grant of lands to the Northern Pacific Railroad Company, that "the odd sections of land hereby granted shall not be liable to sale or entry or pre-emption before or after they are surveyed except by said company as provided by this act," affected only lands within the limits of the grant as fixed by the definite location of the road; and the fact that land at the time of its cash entry by an individual was within 40 miles of the line of road as shown by the map of general route theretofore filed, the lands not having been withdrawn from private entry, did not affect the validity of such entry, where the land was outside the limits of the grant as subsequently fixed by the map of definite location, and was never claimed under the grant by the railroad company. Nor could the purchaser be deprived of the equitable title to such land by the arbitrary action of the land department, taken after the definite location of the railroad, and after his grantees had entered into possession and made improvements, in canceling his entry without notice to such grantees or the return of the purchase money, and in patenting the land to another on a subsequent entry; and where such entry was made with knowledge of the facts, and of the possession and claims of the grantees of the former purchaser, a court of equity will compel a conveyance from the patentee to the equitable owners.

Suit in equity against the holder of a United States patent for land, of which the plaintiffs claim to be the equitable owners, for a decree directing a conveyance of the legal title, and to cancel a mortgage given by the patentee.

Richard H. Ormsbee, Melvin M. Godman, Thomas H. Brents, and Wellington M. Clark, for complainants.

B. L. & J. L. Sharpstein, for defendants.

HANFORD, District Judge. The undisputed facts in this case, briefly stated, are as follows:

On November 8, 1870, the land in controversy appeared upon the plats in the land office for the district in which the same are situated to be vacant, unappropriated public land, offered for sale under the then existing land laws of the United States at private cash entry; and on said date James K. Kennedy made application to purchase the same, and paid the price therefor to the receiver. The officers accepted the application and money, and issued to said purchaser a patent certificate, stating that he had purchased and paid for the land according to law, and was entitled to receive a patent therefor; but no patent has ever been issued to him or to his vendees. Nearly two years after the entry, and before any proceedings to cancel the same had been commenced, said purchaser sold part of the land to one George, and the remaining part to one Bruce; and immediately thereafter these vendees caused their deeds to be properly recorded in the public records of Walla Walla county, in which the land is situated, and inclosed the same by substantial fences, and commenced cultivation thereof, and have made valuable improvements thereon; and they and their successors in interest have, ever

94 F.—44

since the date mentioned, held actual, visible, and exclusive possession of said land, except as hereinafter recited; and the plaintiffs now claim to be the equitable owners, as the lawful successors in interest of their ancestors, George and Bruce, the vendees of the original purchaser from the government. The land is part of an odd-numbered section, but not part of the grant to the Northern Pacific Railroad Company, because not within the limits of the granted lands as fixed and determined by the definite location of the line of the railroad, and it has not been selected or claimed by the railroad company as lieu land. Nevertheless the land department has assumed to cancel the above-mentioned cash entry on the ground that at the date of the entry the land was not subject to sale, because situated within 40 miles of the line of the general route of the Northern Pacific Railroad, as indicated on a map filed in the general land office on the 13th of August, 1870. The only authority for canceling the entry claimed by the land department or the defendants is found in the 6th section of the charter of the Northern Pacific Railroad Company (Act July 2, 1864 [13 Stat. 365]), which reads as follows:

"Sec. 6. And be it further enacted, that the president of the United States shall cause the lands to be surveyed for forty miles in width on both sides of the entire line of said road, after the general route shall be fixed, and as fast as may be required by the construction of said railroad; and the odd sections of land hereby granted shall not be liable to sale, or entry, or pre-emption before or after they are surveyed, except by said company as provided in this act. * * *"

It was the practice of the land department to promulgate an order withdrawing from sale, and from pre-emption and homestead entries, all odd-numbered sections of land within 40 miles of the proposed line of the Northern Pacific Railroad, after receiving each of the maps of the general route which the company filed, and before the grant had become legally attached to the land within such limits by the definite location of the line of the road; but no order withdrawing the lands in controversy from sale was promulgated until December 8, 1870, which was a month after the above-mentioned cash entry. Before the initiation of any proceedings to cancel said entry, to wit, on February 21, 1872, the Northern Pacific Railroad Company filed in the general land office an amended map of its general route, making such a deviation from the line indicated by the map filed August 13, 1870, as to exclude the land in controversy from the 40-mile limit. The action of the land department in assuming to cancel the entry was initiated after the original purchaser had sold the land and conveyed all his interest therein, and after his vendees had recorded their deeds and entered into actual possession of the land; but notice of such proposed cancellation was not given to them, and they had no actual information thereof, or opportunity to be heard in opposition thereto, and the money paid to the government for the land has not been repaid or tendered to the original purchaser, his vendees, or their successors. In the year 1882 the father of the defendant Riddle purchased George's part of the land on credit, and gave a mortgage upon it for the purchase money, no part of which has been paid; and the mortgage has been duly foreclosed and repurchased by George, who resumed possession. During the time that

the George tract was in possession of said purchaser, he neglected to keep up the fences, and said defendant made entry upon the land in his father's possession, through a gap in the fence, and erected a house thereon, and thereafter filed an application in the land office to enter the entire tract, including the portion in possession of the Bruce family, under the homestead law. At and previous to the time of initiating his homestead claim, said defendant was fully informed as to all the facts in regard to the cash entry and sale of the land to George and Bruce, and their possession, cultivation, and improvement of it, as above recited. In the face of all these facts the land department allowed the entry of Riddle to stand, and a patent for the land has been issued to him. After he received his patent certificate, and before the issuance of the patent, and while Bruce and George were in possession of the land, asserting their ownership, Riddle mortgaged the land to Krutz, his co-defendant.

It seems hardly necessary to make any comment upon the above facts, and the rights of the complainants are so obvious that the ground for discussion of legal questions is very narrow. It seems to me that it would be difficult to imagine a more flagrant case of dishonest land-jumping, and, if the proofs were not indisputable, it would scarcely be believed that the land department could have given support to Riddle's claim. With entire fairness to the defendants, the preliminary part of the argument made in their behalf may be condensed into the simple proposition that the patent is a conveyance of the legal title to the land from the government to the defendant George M. Riddle, and, so far as affects the inquiry in this case, the defendants have a perfect and vested right to the land, unless the complainants show affirmatively that their right to the land is paramount in equity. This much must be conceded in their favor, and the whole controversy must be determined by a decision of the single question whether the cash entry made by Kennedy is valid, notwithstanding the attempted cancellation of it by the land department. The facts being undisputed, the decision of the land department was necessarily a decision of a question of law, and, if erroneous, the court is not precluded from considering the case freely, as if there had been no such attempted adjudication. Individuals who purchase land from the government pursuant to the public land laws of the United States acquire thereby vested rights, which cannot be devested by the mere arbitrary pronouncement of officers of the land department. Cornelius v. Kessel, 128 U. S. 456-463, 9 Sup. Ct. 122. The argument against the validity of Kennedy's cash entry rests entirely upon the authority of the decisions in the following cases: Buttz v. Railroad Co., 119 U. S. 55, 7 Sup. Ct. 100; Railroad Co. v. Orton, 6 Sawy., 157, 32 Fed. 457; Knevals v. Hyde, 6 Fed. 651. These cases are relied upon to support the contention that the clause of the sixth section of the Northern Pacific Railroad Company's charter above quoted must operate by its own force to withdraw from market all odd-numbered sections of land within the specified limits on each side of the line of the general route of the railroad, immediately upon filing the map thereof in the general land office; and the validity of said cash entry is not questioned by the defendants on any other ground than this: that the land was

not subject to sale on November 8, 1870, because it was situated within said limits, as defined by the map of the general route of the Northern Pacific Railroad Company previously filed. If this land was within the limits of the grant as the same had been fixed by the definite location of the line of the Northern Pacific Railroad, the cases cited would require serious attention, and it would be necessary to determine whether, in view of the later declarations of the supreme court, they might be safely followed as trustworthy guides leading to the correct interpretation of the grant. The broad statement in the opinion by Mr. Justice Field in the case of Buttz v. Railroad Co., that "when the general route of the road is thus fixed in good faith, and information thereof given to the land department by filing the map thereof with the commissioner of the general land office or the secretary of the interior, the law withdraws from sale or pre-emption the odd sections to the extent of 40 miles on each side," is not warranted by the words of the charter, and is inconsistent with recent decisions of the supreme court,—notably, in the case of Railroad Co. v. Sanders, 166 U. S. 620–637, 17 Sup. Ct. 671, wherein the court, in the opinion delivered by Mr. Justice Harlan, after quoting from the sixth section the clause which is supposed to invalidate the entry, viz. "the odd sections of land hereby granted shall not be liable to sale or entry or pre-emption before or after they are surveyed, except by said company, as provided in this act," makes the following comment:

"But this section is not to be construed without reference to other sections of the act. It must be taken in connection with section 3, which manifestly contemplates that right of pre-emption or other claims and rights might accrue or become attached to the lands granted after the general route of the road was fixed, and before the line of definite location was established. * * * The third and sixth sections must be taken together, and, so taken, it must be adjudged that nothing in the sixth section prevented the government from disposing of any of the lands prior to the fixing of the line of definite location, or, for the reasons stated, from receiving, under the existing statutes, applications to purchase such lands as mineral lands."

However, it is unnecessary to review and contrast the different decisions in which this statute has been under consideration, for the reason that the cases cited by counsel for the defendants are so different from the case under consideration that they do not bear at all upon the point to which attention must be directed in this case. It must be kept in mind that the land here in controversy is not within the limits of the grant to the Northern Pacific Railroad Company, as fixed by the definite location of its line, so that the grant never in fact became attached to this land, and no right to the land is being asserted by the railroad company, or by virtue of any purchase from the railroad company. In the case of Knevals v. Hyde the court did not have to construe the grant to the Northern Pacific Railroad Company, nor any similar act of congress. The opinion contains no allusion whatever to any map of general route preliminary to the definite location of the railroad, and the decision of the court is to the effect that the line of the railroad had been definitely fixed, that the grant had actually attached to the land in controversy, and the equitable title thereto became vested in the company, prior to the origin of the adverse title claimed by the defendant. In each of the other cases the title of the

railroad company under a grant from congress was involved, the land in controversy being within the limits of the grant as fixed by the definite location of the company's line.   These cases are not in point here, for the reason that the lands involved in this case were not granted by act of congress to the Northern Pacific Railroad Company, and therefore are not within the terms of the sixth section, which provides for surveying a strip 40 miles in width on both sides of the entire line after the general route shall be fixed, but says nothing about restricting sales or entries of odd-numbered sections within 40-mile limits.   The restricting clause refers only to land granted by the act, and cannot by any rule of construction be extended so as to interfere with the sale by the government of lands not granted.   "Any other interpretation would defeat the evident purpose of congress in excepting from railroad grants lands upon which claims existed of record at the time the road to be aided was definitely located."   Railroad Co. v. Sanders, 166 U. S. 630, 17 Sup. Ct. 674; Menotti v. Dillon, 167 U. S. 720, 17 Sup. Ct. 945.

The whole case may be summed up in a few words:   Kennedy's cash entry was made in good faith in accordance with the laws existing at the time it was made, and the government has received and retained his money.   Naught appears to affect the validity of the entry, except the order canceling it, made upon no other ground than an assumption that it conflicted with the rights of the Northern Pacific Railroad Company under its congressional grant.   The entry does not conflict with the grant to the Northern Pacific Railroad Company, because the land is outside of the limits of the grant, and the entry does not even conflict with any regulation or order of the land department in force at the time it was made or at the time the cancellation was ordered.   I must therefore conclude that the plaintiffs have established their claims as equitable owners of the land in controversy, and they are entitled to have a decree requiring the defendant Riddle to convey to them the legal title, and declaring the mortgage held by the defendant Krutz to be void in so far as it affects the land in controversy, and to have an injunction forbidding any proceedings to foreclose said mortgage or to enforce any rights thereunder.